U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

AUG 2 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
                DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| K.P.'S AUTO SALES, INC., ET AL. | : | DOCKET NO. 2:07 CV 031 |
| VS. | : | JUDGE MINALDI |
| GENERAL MOTORS CORP., ET AL. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion to for Summary Judgment[1] filed by defendants General Motors

Corporation ("GM") and William Navarre ("Navarre").  The plaintiffs, K.P.'s Auto Sales, Inc. and

Kenneth J. Phipps (collectively "K.P."), have filed an opposition, to which the defendants have filed

a reply.

## BACKGROUND

On or about February 28, 2005, K.P. allegedly entered into an agreement to purchase the

assets of ADG, Inc. ("ADG"), an automobile dealership which includes a Cadillac franchise.[2] ADG

was a party to a Cadillac franchise or dealer agreement with GM.[3]  The agreement was contingent

---

[1]     This motion was filed as a Motion to Dismiss pursuant to Rule 12(b)(6)   [doc. 11], but converted to a summary judgment by the court by Order dated May 1, 2007.

[2]     Pet. § 6.

[3]     Defendants' Exhibit A, the Declaration of Alvon Giguere which authenticated the "Standard Provisions" of the dealer agreement between ADG. Inc. and GM.

upon GM's approval of the transfer of the Cadillac dealer agreement to K.P.[4]  The approval process required K.P. to submit an application to GM which contained confidential business and financial information.[5]

K.P. alleges that at some point between February 28, 2005 and April 11, 2005, GM disclosed this confidential information to Navarre[6], a competing automobile dealer in the same marketplace as K.P.[7]  Navarre then submitted an offer to purchase ADG's assets and the Cadillac franchise.[8] Around the same time, GM denied K.P.'s application, despite a promise by a GM representative that K.P. would have no problem obtaining GM's approval.[9]

On November 30, 2006, K.P. filed suit in state court and asserted the following claims against GM: (1) breach of the dealer agreement between ADG and GM, to which K.P. is a third party beneficiary, (2) breach of the implied covenant of good faith and fair dealing, and (3) tortious interference with business relations and diversion of business opportunities.  K.P. asserted the following claims against Navarre: (1) violation of the Louisiana Unfair Trade Practices Act, (2)

---

[4]     *Petition* § 8.  The plaintiff's complaint refers to a "franchise agreement."  In their Motion to Dismiss, the defendants noted that the so-called franchise agreement is properly denominated "Dealer Sales and Service Agreement" and attached a portion of the agreement to their motion.  The court will therefore refer to the agreement as the "dealer agreement."

[5]     *Id.* § 11; Declaration by GM ¶3; Affidavit of Kenneth Phipps, ¶¶ 2, 4-5.

[6]     Declaration by GM ¶ 5.

[7]     Petition §§ 15, 17.

[8]     *Id.* §§ 17; Declaration by Navarre ¶3; Affidavit of Phipps, with attached letters from William Navarre.

[9]     *Petition.* §§ 18, 20-22.

2

breach of the implied covenant of good faith and fair dealing, and (3) tortious interference with business relations and diversion of business opportunities.

The action was removed to federal court on the grounds that Navarre, a non-diverse defendant, was fraudulently joined.[10]  The plaintiffs have not contested removal.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact. [11] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct.

---

[10] *See* Doc. 3.

[11] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248,106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has

a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is

a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*,

477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual

inferences from the evidence in the light most favorable to the party opposing summary judgment.

*Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119

L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing

summary judgment may not rest on mere conclusory allegations or denials in his pleadings.

Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

## ANALYSIS

### A. Claims against GM

#### *Third Party Claim*

K.P. avers that "Plaintiffs are third party beneficiaries of the franchise agreement between

GM and ADG, Inc."[12] Article 1978 of the Louisiana Civil Code provides, "A contracting party may

stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code Art. 1978

(2007). In Louisiana, a third party beneficiary contract is also known as a *stipulation pour autrui*.

*See* La. Civ. Code Art. 1977 cmt. (c). There are three requirements to determine whether a contract

provides a benefit for a third party: (1) the stipulation for a third party is manifestly clear; (2) there

is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the

---

[12]     Petition § 27.

4

contract between the promisor and the promisee. *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So.2d 1206, 1212 (La. 2006).

In discussing the first requirement of a *stipulation pour autrui*, the Louisiana Supreme Court court explains that the contract must " manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof." *Joseph*, 939 So.2d at 1212; *see also Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 931 (5th Cir. 1995) ("The existence of a *stipulation pour autrui* depends on the intention to create it."). The Court found that the second requirement– certainty as to the benefit provided– "is a corollary of the requirement of a manifestly clear stipulation." *Joseph*, 939 So.2d at 1212. In regard to the third requirement the Court quotes from Professor J. Denson Smith, who wrote that "not every promise, performance of which may be advantageous to a third person, will create in him an actionable right. The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties."" *Id.* at 1212-1213 (quoting J. Denson Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui*, 11 Tul. L. Rev.18, 28 (1936).

K.P. argues that the dealer agreement contemplates the existence of a third party where it states, "If a Dealer proposes a change in Dealer Operator, a change in ownership, or a transfer of the dealership business...General Motors will consider Dealer's proposal and not arbitrarily refuse to approve it."[13] The defendants point to a paragraph in the contract bearing the heading "No Third Party Benefit Intended."[14] This paragraph provides, "This Agreement is not enforceable by any third

---

[13]     Defs.' Ex. A, at 15.

[14]     *Id.* at 28, ¶ 17.9.

5

parties and is not intended to convey any rights or benefits to anyone who is not a party to this Agreement."

Applying the *Joseph* requirements to the instant petition, the court finds that there is no genuine issue of material fact that the plaintiffs are not third party beneficiaries. The stipulation for a third party in the subject contract is not manifestly clear.

Even if one disregards the language of §17.9 of the contract, and focuses on the language contained in Article 12 of the GM/ADG contract which reads that GM "will consider Dealer's (i.e., ADG's) proposal" there is no competent summary judgment evidence to establish a third party claim under Louisiana law.

### Breach of Implied Covenant of Good Faith and Fair Dealing

The plaintiffs' good faith and fair dealing claim is contingent upon whether they are third parties beneficiaries to the contract between GM and ADG.   The plaintiffs are not parties to the contract, nor are they third party beneficiaries.  Accordingly, they have no claim against GM for breach of an implied contract.

### Tortious Interference

The prescriptive period for tortious interference with a contract is one year. *Simmons v. Templeton,* 723 So.2d 1009, 1012 (La.App. 4 Cir.,1998). The alleged actions giving rise to this suit occurred between February, 2005, and April, 2005. This suit was not filed until November 30, 2006. This claim has clearly prescribed.

## B. Claims against Navarre

### Louisiana Unfair Trade Practices Act

6

According to the language of the statute, plaintiffs have one year from the time of the "transaction or act which gave rise to this right of action" to sue under LUPTA. La. R.S. 51:1409 E. The act gives a right of action under section 1409 when the plaintiff "suffer[s] any ascertainable loss of money or moveable property." La. R.S. 51:1409 A.  Furthermore, the prescriptive period for a private action pursuant to LUPTA is preemptive. La. R.S. 51:1409 E. A preemptive period cannot be renounced, interrupted or suspended. La. C.C. art. 3461. *Morris v. Sears, Roebuck and Co.,* 765 So.2d 419, 422, 1999-2772 , **4 (La.App. 4 Cir., 2000).

The defendant's argument in opposition to this claim is two-fold. First, the defendants argue that the plaintiffs do not have a claim under LUTPA because Navarre's actions did not cause the "ascertainable loss of money or moveable property". The plaintiffs allege that the wrongful act by Navarre was making an offer to purchase the ADG dealership. They do not offer evidence that that the offer was ever accepted, because it was not.[15]  Therefore there could be no ascertainable loss from Navarre's action.

Second, the alleged acts which gave rise to plaintiffs' cause of action occurred between February, 2005, and April, 2005. This suit was not filed until November 30, 2006.  Again, there is no genuine issue of material fact.   Because Navarre's offer was not accepted,  there was no ascertainable loss and the cause of action pursuant to LUPTA has prescribed.

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

As stated above, neither the plaintiffs nor Navarre were parties to the contract between GM and ADG, nor were they third party beneficiaries.  The plaintiffs cannot, therefore, have a claim

---

[15]     Affidavit of William Navarre, ¶3.

7

against Navarre for an implied breach of that contract.

### *Tortious Interference*

For the reasons stated hereinabove, the plaintiffs claims for tortious interference against Navarre has prescribed.

## CONCLUSION

The fact that no answer has been filed and no discovery has been conducted does not prevent the court from granting this motion. A thorough review of the complaint and the language of the dealer agreement between ADG, Inc. and GM, along with the accompanying declarations, demonstrate that there are no genuine issues of material fact. The plaintiffs are not third party beneficiaries of the franchise agreement between GM and ADG. Accordingly, they do not have a viable good faith and fair dealing claim against GM or Navarre. The tortious interference claims and the claim pursuant to LUPTA have prescribed. Summary judgment will be granted.

Lake Charles, Louisiana, this __22__ day of April, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

8